UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL W JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 16-cv-02913-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 47 |

On September 22, 2017, the Court held a hearing on defendant's motion for summary judgment as to plaintiff Daniel Johnson, who is appearing *pro se*. For the reasons set forth below, the motion is GRANTED.

**BACKGROUND**

Plaintiff worked as a painter for the San Francisco Municipal Transit Authority ("MTA") from November 15, 2010 to December 21, 2011, when he was terminated. Coe Decl. Ex. 5.[1] As part of his employment, plaintiff was required to complete a probationary period of 2,080 hours before he could become a permanent civil service employee. Coe Decl. Exs. 3, 4. When plaintiff

---

[1] Defendant states that plaintiff was terminated on December 19, 2011. As discussed *infra*, the record before the Court shows that on December 19, 2011, plaintiff refused to sign a form agreeing to extend his probationary period, and on December 21, 2011, plaintiff again refused to agree to the extension, and on that day plaintiff was released from his probationary period, effective December 21, 2011. The Court's determination that plaintiff was released from his probationary period effective December 21, 2011 does not affect the Court's conclusion that plaintiff has failed to raise a triable issue of fact regarding his claims.

was hired, he was given a "Notice of Probationary Status" which stated:

> This is the final and most important phase of the selection process. The probationary period is used to evaluate your performance on the job. The duration of your probationary period is 2080 hours; and begins on 11/15/2010 and is scheduled to be completed COB 11/14/2011. Extensions of your probationary period are governed by the Civil Service Commission Rules and provisions in your Memorandum of Understanding (MOU) or ordinance. During this probationary period, you may be released by your appointing officer at any time in accordance with Civil Service Commission Rule 117 – Probationary Period.

Johnson Depo Ex. 8 (Kuka Decl. Ex. 1). Plaintiff signed the notice, thereby acknowledging that he received a copy of it and understood its contents. *Id*.

After plaintiff began his employment, MTA discovered that plaintiff had failed to disclose on his employment application the fact that he had two prior criminal convictions for reckless driving and battery. Coe Decl. ¶ 4 & Ex. 1. On December 13, 2010, MTA Manager of Field Operations Antoinette "Toni" Coe[2] and MTA Manager of the Traffic Paint Shop Mike Macario held a meeting with plaintiff and his union representative regarding the failure to disclose the criminal convictions, and MTA decided not to terminate plaintiff. *Id*. The incident was documented in plaintiff's personnel file. *Id*.

On June 17, 2011, plaintiff and another City employee used a City vehicle to run a personal errand. *Id*. ¶ 5. Thereafter, they became involved in a dispute with another driver, and the other driver shot at the City vehicle in which plaintiff was a passenger. *Id.* Ex. 2. Plaintiff suffered a graze wound to his shoulder and was treated at San Francisco General Hospital. *Id*. Plaintiff received a written warning for misconduct because the use of a City vehicle for non-work purposes was against MTA's policies and procedures. *Id*.

Following this incident, plaintiff took a leave from work. *Id.* ¶ 6. Plaintiff states that on June 22, 2011, he submitted a doctor's note to his supervisor, John Tynan. Johnson Decl. ¶ 6.[3]

---

[2] Ms. Coe's declaration states that she was the Manager of Field Operations from 2008 until her retirement in June 2014. Coe Decl. ¶ 1.

[3] Plaintiff's declaration also includes statements alleging that he was denied "assault pay," and that he should have received assault pay instead of worker's compensation. Johnson Decl. ¶¶ 3-5. However, the SAC does not contain any allegations regarding "assault pay" or worker's compensation. Therefore, this issue falls outside the scope of this lawsuit, and the Court will not consider it. *See McMichael v. Napa County*, 709 F.2d 1268, 1273 n.4 (9th Cir. 1983) (a court need not consider claims that were not raised in the complaint). Moreover, it appears that this Court

2

The note, which was dated June 22, 2011 and from plaintiff's treating physician at Kaiser, stated that plaintiff had been seen for Acute Stress Disorder and that he would be unable to return to work from June 27, 2011 through July 10, 2011 and, pending further evaluation, could return to work without restrictions on July 11, 2011. Opp'n, Attachment 1. Plaintiff subsequently returned to work without restrictions.

On November 15, 2011, two of plaintiff's supervisors, John Tynan and Regidor "Reggie" Ruaro, congratulated him on passing his probationary period. Johnson Depo. at 43-44; Edwards Decl. at 1:16-2; Tynan Decl. ¶ 3. According to defendant, MTA later learned that plaintiff had not actually completed 2,080 hours by November 14, 2011. Coe Decl. ¶ 12. Plaintiff states that Coe later informed him that he had not completed his hours on his scheduled date because he had missed time from work following the incident on June 17, 2011 with the City vehicle. Second Amended Complaint ("SAC") at 4:21-24. It appears from the record before the Court that between November 15 and December 19, 2011, plaintiff believed that he had passed his probationary period.

Defendant asserts that after plaintiff believed he passed his probationary period, his work performance declined. *See* Coe Decl. ¶ 7. While plaintiff disputes that his work performance declined, in his deposition he testified that once he believed he was a permanent employee, he started complaining about work assignments, such as complaining that more senior employees were not given particular assignments. Johnson Depo. at 74:21-24 (Kuka Decl. Ex. 1). Defendant has submitted evidence showing that on December 9, 2011, Tynan met with plaintiff after plaintiff's crew lead reported that plaintiff was being insubordinate, unwilling to take direction, and slowing down on the job. Tynan Decl. ¶ 4 & Ex. 1. Tynan followed up with plaintiff's crew lead, who informed Tynan that plaintiff's "performance had changed significantly since [plaintiff] believed he passed the probationary period." *Id*. On December 12, 2011, Tynan again met with plaintiff and reiterated to him that he needed to complete his work assignments and not worry

---

would not have jurisdiction over any such claims, as the Workers' Compensation Appeal Board has "exclusive jurisdiction over disputes regarding an employee's right to compensation or the liability of an employer." *Marsh & McLennan, Inc. v. Superior Court*, 49 Cal.3d 1, 5 (1989) (citing Lab. Code § 5300 (a) & (b)).

about what other employees were doing. *Id.*, Ex. 1. On December 14, 2011, plaintiff "inappropriately questioned" Tynan's work and accused him of having a "secret meeting." *Id.* ¶ 6, Ex. 1. Tynan states that on that day, he had instructed plaintiff to return to work, but five minutes later, Tynan found plaintiff looking into his office to see what he was doing. *Id.* This behavior resulted in a second written warning, dated December 14, 2011, for "Insubordination/ Misconduct." *Id.* ¶ 7, Ex. 1.

In her declaration, Coe states that this change in plaintiff's behavior was a cause for concern. Coe Decl. ¶ 8 ("The probationary period is the most important phase of the hiring process, and Mr. Johnson's sudden shift in behavior indicated that we did not have an opportunity to assess his true performance."). MTA's practice is to extend probationary periods for employees who have behavior issues during their probationary period. *Id.* ¶ 9. Coe's declaration states that this practice complies with the MOU between the city and various unions, as well as with San Francisco Civil Service Commission Rule 417 *et seq.*, which governed plaintiff's employment. *Id.* Coe states that when management has concerns regarding a probationary employee's performance, MTA has two options: the employee and MTA can agree to extend the probationary period to more fully assess the employee, or MTA can terminate the employee. *Id.* ¶ 10. Coe states that she decided to extend plaintiff's probationary period by six months "to give [plaintiff] a chance to correct his behavioral issues." *Id.* ¶ 11.

On December 19, 2011, Coe met with plaintiff "to inform him that he had not completed the 2,080 hours of service required to complete his probationary period, and to tell him that she had decided to extend his probationary period for six additional months due to the performance issues documented in his personnel file." *Id.* ¶ 12.[4] Coe states that plaintiff acted belligerently during the meeting. *Id.* ¶ 13 ("At one point in the conversation, he screamed 'Go Fuck Yourself!' at me."). Plaintiff disputes that he screamed at Coe, stating that he was "completely professional in the meeting." Opp'n at 3:16-19. Plaintiff also states that he was "in shock," and he told Coe

---

[4] It is unclear from the record when MTA first determined that plaintiff had not completed the 2,080 hours required to complete his probation.

4

that he would need to count his hours because he had worked a lot of overtime. *Id.* at 3-4. It is, however, undisputed that plaintiff refused to agree to extend his probation during this meeting. Two days later,[5] on December 21, 2011, Coe met with plaintiff, his union representative and Ruaro, and it is undisputed that plaintiff again refused to agree to extend his probation. *Id*. ¶ 15. Coe informed plaintiff that as a result, MTA was releasing plaintiff from his probationary period. *Id*. Defendant has submitted a copy of a form titled "Notice and Report of Probationary Status," which is signed and dated by Coe and Ruaro on December 19, 2011, and that states "12/19/11 employee refused to sign." *Id*. Ex. 5. In Part IV of that document, titled "Report of Release from Probationary Appointment," a box is checked next to the statement "Employee is released during the probationary period effective COB: 12/21/2011," and signed by the Director of Human Relations. *Id.*

Plaintiff alleges that he was discriminated against because "I should not have had to extend my probation due to P.T.S.D." SAC at 4:25-27. Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") on December 20, 2011. *See* Opp'n, Attachment 2 (doctor's note dated December 20, 2011 stating diagnosis of PTSD). Defendant claims that plaintiff did not submit any paperwork nor verbally inform any of his supervisors at MTA that he had any ongoing medical issues prior to Coe's decision to extend plaintiff's probation and ultimately release him from probation. Coe Decl. ¶ 16. According to Coe, Tynan and Ruaro's declarations, they knew that plaintiff returned to work in July of 2011 without restrictions, and they had no information indicating that plaintiff might be disabled. Coe Decl. ¶ 16; Tynan Decl. ¶ 9; Ruaro Decl. ¶ 5. Coe states that she first learned of plaintiff's PTSD diagnosis in 2013, due to her involvement in the investigation of plaintiff's complaint filed with the California Department of Fair Employment and Housing ("DFEH"). Coe Decl. ¶ 16.

Plaintiff's opposition states that he hand delivered the December 20, 2011 doctor's note to

---

[5] Plaintiff states in his opposition that the second meeting took place "the next day," which would have been December 20, 2011. Opposition 3:20-25. However, on the "Notice and Report of Probationary Status," which plaintiff refused to sign, the amended date is written as December 21, 2011, with the original date marked as December 19, 2011. Coe Decl. Ex. 5.

1  Tynan and Ruaro on December 20, 2011, and further that MTA (including Coe) was on notice of
2  his disability starting June 22, 2011, when defendant received plaintiff's doctor's note diagnosing
3  him with Acute Stress Disorder. Opp'n at 3:25-4:5, 5:20-28; Johnson Decl. ¶ 6-7.

In the operative complaint, plaintiff asserts three causes of action: (1) discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*; (2) retaliation under the ADA; and (3) wrongful termination in violation of public policy. Dkt. No. 27. On August 18, 2017, defendant moved for summary judgment on all claims. Dkt. Nos. 47-48. Plaintiff filed an opposition to defendant's motion on August 31, 2017. Dkt. Nos. 50, 52-53. Defendant filed its reply on September 8, 2017. Dkt. No. 54.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id*.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. "Credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(4).

**DISCUSSION**

**I. Disability Discrimination**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination claims under the ADA are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination. *Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). The burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for its employment action. *Id*. If the employer meets this burden, the plaintiff must offer evidence demonstrating that the employer's explanation is pretextual. *Id*.

**A. Prima Facie Case**

To state a prima facie case under the ADA, an employee must establish: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job that he holds or seeks; and (3) that he has suffered an adverse employment decision because of his disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

Defendant does not dispute that plaintiff's PTSD is a disability. Instead, defendant argues that plaintiff cannot state a prima facie case because there is no evidence that Coe decided to

extend plaintiff's probation or fire him *because* of his disability.[6] To recover under the ADA, a plaintiff must demonstrate that he was terminated "on the basis of disability." 42 U.S.C. § 12112(a). The Ninth Circuit has held that an employee is terminated on the basis of a disability if the disability was a "motivating factor" for the termination. *See Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1048 (9th Cir. 2009); *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005), *abrogated on other grounds by Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

Defendant contends that Coe was unaware of plaintiff's PTSD when she made the decisions to extend his probation and to terminate his employment, and therefore could not have discriminated against him based on a disability. "An adverse employment decision cannot be made 'because of' a disability when the disability is not known to the employer." *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (1997). "[A]n employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 887 (2007) (quoting *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994)). "A supervisor's knowledge of an employee's disability is imputed to the employer because '[a] supervisor is the employer's agent for purposes of vicarious liability for unlawful discrimination.'" *Alejandro v. ST Micro Electronics, Inc.*, 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015) (quoting *Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1015 (2004)).[7]

---

[6] The Court examines both Coe's decision to extend plaintiff's probation as well as the decision to terminate plaintiff because the decisions are related.

[7] The Ninth Circuit has not discussed what constitutes "notice" for purposes of the ADA. Thus, district courts generally cite to California court decisions discussing notice in the context of the California Fair Employment and Housing Act ("FEHA"). "Courts apply the same standards under FEHA and the ADA to assess whether a plaintiff was terminated because of a disability." *Alejandro*, 129 F. Supp. 3d at 908-09; *see, e.g.*, *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1133 n.6 (9th Cir. 2001) ("Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions."); *Faust*, 150 Cal. App. 4th at 887 (applying ADA case law to claim of disability discrimination under FEHA).

8

Here, viewing the evidence in the light most favorable to plaintiff, the record shows that plaintiff provided MTA with his doctor's note dated June 22, 2011 stating that he was being treated for ASD and was placed off work from June 27, 2011 through July 10, 2011 and could return to work without restrictions on July 11, 2011. Johnson Decl. ¶ 6 (stating he gave the note to Tynan on June 22, 2011)[8]; Opp'n, Attachment 1. Plaintiff has also submitted evidence, disputed by defendant, that he gave the December 20, 2011 doctor's note stating he had been diagnosed with PTSD to his supervisors Ruaro and Tynan on December 20, 2011. Viewing the evidence in the light most favorable to plaintiff, the Court finds that based upon the June 22, 2011 doctor's note,[9] plaintiff has raised a triable issue of fact as to whether MTA was on notice that plaintiff was disabled prior to Coe's December 19, 2011 decision to extend plaintiff's probation and subsequent decision to terminate plaintiff.

However, the Court concludes that plaintiff has not raised a triable issue of fact suggesting that he was discriminated against *because* of his disability. Plaintiff alleges that his probation was extended (and he was ultimately terminated) because he had PTSD, but he does not support his allegation with any facts. "The district court can disregard a self-serving declaration that states

---

[8] The fact that plaintiff does not allege that Coe knew about the doctor's note from June 22nd is immaterial. "Because '[a] supervisor is the employer's agent for purposes of vicarious liability for unlawful discrimination,' the allegation that Plaintiff informed his supervisor about Plaintiff's disability is sufficient to allege that Defendant knew about Plaintiff's disability." *Alejandro*, 129 F. Supp. 3d at 910 (quoting Cal. Fair Emp't & Housing Comm'n, 122 Cal. App. 4th at 1015).

[9] In its reply, defendant argues that because plaintiff did not make any allegations regarding ASD in his Second Amended Complaint, he cannot now raise this claim during summary judgment. Reply at 4:4-19. Construing plaintiff's complaint liberally in light of his pro se status, the Court finds that plaintiff is not raising a new claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (internal citation omitted). Further, in his opposition and at the hearing, plaintiff argued that ASD was his initial diagnosis that preceded his later diagnosis of PTSD. *See Acute Stress Disorder*, National Center for PTSD, U.S. Department of Veteran Affairs, https://www.ptsd.va.gov/public/problems/acute-stress-disorder.asp (last visited Sept. 11, 2017) ("Acute stress disorder (ASD) is a mental disorder that can occur in the first month following a trauma. The symptoms that define ASD overlap with those for PTSD. One difference, though, is that a PTSD diagnosis cannot be given until symptoms have lasted for one month."); *see also id.* ("Research has found that over 80% of people with ASD have PTSD six months later."). The Court finds that plaintiff is not precluded from arguing that he was disabled on account of his ASD diagnosis.

only conclusions and not facts that would be admissible evidence." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Plaintiff returned to work in July 2011 without restrictions, and he does not allege (and there is no evidence) that he raised any issue with MTA or his supervisors regarding any medical issues or his ASD diagnosis after his return to work and prior to the December 19, 2011 meeting when Coe informed plaintiff that he had not finished his probation and that his probation was being extended due to performance issues. Further, plaintiff does not dispute that he refused to agree to extend his probation on December 19, 2011, and that he confirmed his refusal on December 21, 2011. Although plaintiff has submitted evidence of the December 20, 2011 diagnosis of PTSD, he does not attempt to link that to the December 21, 2011 release from probation.[10]

Plaintiff's opposition argues that he has made out a prima facie case of discrimination, and he cites the declaration of Doug Edwards as support.[11] Opp'n at 4:28. Mr. Edwards states that he was hired as a probationary painter at the same time as plaintiff and that they worked together, and that on November 15, 2011, Tynan and Ruaro congratulated him and plaintiff for passing their probationary period. *See generally* Edwards Decl.. However, the fact that Mr. Edwards witnessed Ruaro and Tynan congratulating plaintiff for passing his probationary period is not evidence that plaintiff was discriminated against on account of a disability. Plaintiff's opposition also seems to argue that he had worked overtime hours for which he was not given proper credit. Opp'n at 1:28-2:16. However, even if it is true that plaintiff's hours were not calculated correctly when MTA determined whether he had passed his probationary period, a miscalculation of hours would not be

---

[10] The Court notes that at his deposition, plaintiff testified that he did not mention his PTSD at the December 19, 2011 meeting, but that he did raise it "on the 23rd." Johnson Depo. at 124:3-5. Plaintiff may have been referring to the December 21, 2011 meeting. However, neither plaintiff's opposition brief nor his declaration mention this fact, nor does the record contain any information about what plaintiff said about his PTSD at the December 21 (or 23), 2011 meeting. Further, plaintiff does not advance any argument or submit any evidence showing that his PTSD diagnosis may have played a part in his release from probation. However, in an abundance of caution, the Court will address the remaining *McDonnell Douglas* burden shifting framework as if plaintiff had made out a prima facie case of discrimination.

[11] In addition to Mr. Edwards' declaration, plaintiff has submitted several documents related to Mr. Edwards' employment with MTA. These documents are irrelevant to the issues in this case.

evidence of disability discrimination.

It appears from plaintiff's complaint that he may be claiming that he suffered an adverse employment action because of his disability when his probation was extended past his original completion date because he had fallen behind on his hours after missing time due to his injury on June 17, 2011. *See* SAC at 4:21-24. If this is indeed plaintiff's argument, he still fails to raise a triable issue of material fact. Plaintiff's completion date was extended because he had not completed the required 2,080 hours, not because he had a disability. This would have been true regardless of whether plaintiff had to miss time from work because of a medical condition or some other reason. Accordingly, the Court finds that plaintiff has failed to raise a triable issue of fact as to whether he was terminated *because* of his disability.

### B. Legitimate Nondiscriminatory Reason

The Court further finds that even if plaintiff had put forth a prima facie case of discrimination, defendant has successfully rebutted that prima facie case by presenting legitimate, nondiscriminatory reasons for both the decision to extend plaintiff's probation period and the decision to release plaintiff from probation. Defendant presented unrebutted evidence showing that on December 19, 2011, Coe informed plaintiff that he had not completed the 2,080 hours of service required to complete his probationary period, and that she had decided to extend his probationary period for six months due to performance issues documented in plaintiff's personnel file. *See* Coe Decl. Ex. 2 (July 8, 2011 written warning); Tynan Decl. Ex. 1 (December 14, 2011 written warning). It is undisputed that plaintiff refused to agree to the extension of probation on both December 19 and 21, 2011. Defendant has also submitted evidence showing that its decisions were consistent with MTA's general policy. Coe Decl. ¶ 9. According to Coe's declaration, if an employee has performance issues during the course of his probationary period, it is customary for MTA to extend the period to allow the employee to address those issues, or in the alternative, terminate the employee. *See id*. ¶ 10; *see also* Coe Decl. Ex. 4 (Civil Service Rule 417.6 states that "[w]ith the approval of the MTA Director of Transportation/Designee, and with the concurrence of the employee, the employee's probationary period may be renewed. The MTA

1 Director of Transportation/Designee shall establish the administrative process and procedures for
2 accomplishing such successive probationary appointments." Civil Service Rule 417.9 further
3 states that "[a]n employee may be released by the MTA Director of Transportation/Designee at
4 any time during the probationary period upon written notice to the employee.").

Accordingly, the Court finds that because defendant has submitted evidence of a legitimate nondiscriminatory reason for its employment actions, the burden shifts back to plaintiff to demonstrate why this reason is pretextual.

### C. Pretext

To prove pretext, a plaintiff "must produce evidence in addition to that which was sufficient for [his] prima facie case in order to rebut the defendant's showing." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citation omitted). There are two ways that a plaintiff can establish pretext: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citing *Godwin*, 150 F.3d 1220-22).

"Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (citation omitted). "Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination." *Id*. "Because direct evidence is so probative, the plaintiff need offer 'very little' direct evidence to raise a genuine issue of material fact. But when the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Id* (citing *Godwin*, 150 F.3d at 1221) (internal quotation omitted).

Plaintiff does not offer any direct or circumstantial evidence of disability discrimination. At most, plaintiff has submitted evidence showing that months prior to the December 19, 2011 meeting, he informed MTA that he was being treated for ASD, and that on December 20, 2011, he

12

informed MTA that he had been diagnosed with PTSD. Plaintiff has not submitted any evidence suggesting that defendant's reasons for deciding to extend his probationary period or for releasing him from probation after he refused to agree to the extension are pretextual. Plaintiff does not dispute that he received written warnings for performance issues, nor does he challenge defendant's evidence regarding its practice of extending probationary periods for employees who have performance issues during their probation.[12] Plaintiff does assert that he was a good employee, and he cites his employee evaluation report, which he claims does not mention any performance problems. *See* Opp'n at 2:24-26; Johnson Decl. ¶ 8. However, the report does in fact note that his performance was "unacceptable" in regard to his "accountability," further stating that if plaintiff leaves the job site for any reason, he must notify his supervisors. Johnson Decl., Attachment 2 at 7, 10. Additionally, the report would not have mentioned any performance issues after June 30, 2011, such as the incidents documented in the December 14, 2011 written warning, because the report only reviewed the period of November 15, 2010 through June 30, 2011. *See* Johnson Decl., Attachment 2.

The Court concludes that plaintiff has not identified any evidence to suggest that defendant's legitimate, nondiscriminatory reason is not credible. Thus, plaintiff has failed to create a triable issue as to whether defendant's proffered reason was pretext for discrimination. Accordingly, the Court GRANTS summary judgment for defendant on plaintiff's disability discrimination claim.

---

[12] In his opposition and declaration, plaintiff appears to argue that he should not have been written up for the issues documented in his personnel file. For example, plaintiff states that the reason he did not disclose his criminal convictions on his employment application was because he believed he only needed to disclose felonies. Opp'n at 10-16. In regard to the incident with the City vehicle, plaintiff asserts that he was a passenger and had no control over the driver's actions. *Id*. at 2:4-9; Johnson Decl. ¶ 10-11. Similarly, plaintiff states that he made the comment to his supervisor about the "secret meeting" because he felt alienated. Opp'n at 5:12-19. However, although plaintiff may feel that his conduct did not merit written warnings, plaintiff does not dispute that he engaged in all of the conduct that resulted in the written warnings, and plaintiff does not contend that any of those written warnings were issued on account of his disability.

13

## II. Retaliation

Plaintiff also claims he was terminated in retaliation for informing his employer about his PTSD. The ADA prohibits an employer from retaliating against an employee for engaging in protected activity. *See* 42 U.S.C. § 12203(a). "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id*.

The Ninth Circuit applies the Title VII retaliation framework to ADA retaliation claims. *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003). A prima facie case of retaliation under the ADA requires proof that the employee: (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) that there was a causal link between the two. *Id*. at 1186-87. "If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual." *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004) (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)).

The Court need not address whether plaintiff has stated a prima facie case of retaliation because as detailed above, defendant has set forth a legitimate nondiscriminatory reason for its employment decisions, and plaintiff has failed to establish pretext.[13] Accordingly, the Court GRANTS summary judgment for defendant on plaintiff's retaliation claim.

## III. Wrongful Termination in Violation of Public Policy

Plaintiff alleges a common law claim for wrongful termination in violation of public policy. *See* SAC at 5:1-2. However, the SAC does not allege any facts in support of this claim, and plaintiff does not address this claim in his opposition.

---

[13] The Court also notes that although defendant moved for summary judgment on this claim, plaintiff does not address his retaliation claim in his opposition.

14

Defendant argues that plaintiff's claim is barred under the California Government Code because plaintiff cannot assert a common law claim for wrongful termination in violation of public policy against a public entity. The Court agrees. Section 815 of the Government Claims Act bars this type of claim against a public entity. *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899 (2008) ("[S]ection 815 [of the Government Claims Act] bars *Tameny*[14] actions against public entities."). Thus, the Court GRANTS summary judgment for defendant.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is GRANTED. Dkt. No. 47.

**IT IS SO ORDERED**.

Dated: October 6, 2017

SUSAN ILLSTON
United States District Judge

---

[14] In *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172-78 (1980), the California Supreme Court recognized the common law claim of wrongful termination in violation of public policy. The court stated: "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id.* at 170.